UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DARIUS PRINTUP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:21-cv-00280-JPH-MG |
| ) | |
| WENDY KNIGHT, et al. ) | |
| ) | |
| Defendants. ) | |

**ORDER SCREENING COMPLAINT, DISMISSING DEFICIENT CLAIMS, AND DIRECTING ISSUANCE AND SERVICE OF PROCESS**

Darius Printup filed this civil rights action alleging that the defendants deprived him of religious items and denied him an opportunity to wash before prayer while he was housed in the disciplinary restrictive housing unit at Correctional Industrial Facility in Pendleton, Indiana. The complaint is subject to screening.

**I.     Screening Standard**

Pursuant to 28 U.S.C. § 1915A(b), the Court must dismiss the complaint, or any portion of the complaint, if it is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. In determining whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017). For the complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II.     The Complaint

The complaint names eight defendants: (1) Warden Wendy Knight, (2) Curtis Duncan, (3) Mrs. Hall, (4) Lieutenant Richey, (5) Sergeant Jackson, (6) Lieutenant Hestand, (7) Captain Ridgeway, and (8) Officer Samaniego. In the complaint, Mr. Printup alleges the following facts, which the Court accepts as true for the purposes of screening.

Mr. Printup is a practicing Muslim, and he believes that he is required to pray five times daily, following specific conditions. This requirement is particularly important during Ramadan, which was observed from April 13 to May 13, 2021.

On April 12, 2021, Mr. Printup asked Mrs. Hall for a shower and a clean uniform so he could be free of impurities before Ramadan. Mrs. Hall never answered. Later that day, staff told Mr. Printup that Lieutenant Hestand and Captain Ridgeway had denied the requests.

Warden Knight maintained a policy at Correctional Industrial Facility that inmates in restrictive housing—where Mr. Printup was housed—would not have access to prayer rugs or kufis, which are caps worn during prayer. When Mr. Printup was transferred to the restrictive housing unit, he lost access to his kufi and a prayer rug that was borrowed from another inmate.

Mr. Printup tried to buy another prayer rug from commissary, but Mr. Duncan told him he could not have a prayer rug in the restrictive housing unit. Mr. Duncan recommended getting a second blanket to use just for prayer. Mr. Printup requested and received such a blanket. But on April 15, 2021, Lieutenant Richey and Sergeant Jackson confiscated all "extra" blankets from inmates in the restrictive housing unit.

On April 15 or 16, 2021, Mr. Printup asked Warden Knight about the ban on prayer rugs and kufis. She said she would look into it. Within a week, the ban was lifted. But when Mr. Printup requested his kufi back, Officer Samaniego failed to return it. And when Mr. Printup tried to order

a prayer rug from commissary, the prayer rug was not delivered because Mrs. Hall had failed to notify the commissary company about the policy change.

On June 4, 2021, Mr. Printup was transferred to another prison. He still had not received his kufi or a prayer rug.

Mr. Printup alleges that the defendants' actions violate his Fourteenth Amendment right to equal protection and his First Amendment right to freely exercise his religious beliefs. He seeks compensatory and punitive damages.

### III. Discussion

#### A. Equal protection claims

All claims alleging violation of the Fourteenth Amendment's equal protection clause are **DISMISSED** for failure to state a claim upon which relief may be granted.

"The Equal Protection Clause of the Fourteenth Amendment prohibits intentional and arbitrary discrimination." *Dunnet Bay Const. Co. v. Borggren*, 799 F.3d 676, 696 (7th Cir. 2015). To state a viable equal protection claim based on group membership, Mr. Printup must allege that (1) he was a member of a protected class, (2) he was treated differently from a similarly situated member of an unprotected class, and (3) the defendants were motivated by a discriminatory purpose. *Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017).

Mr. Printup does not allege that he was treated differently from similarly situated non-Muslims. Instead, he alleges that he was denied a prayer rug and kufi "solely because [he] was housed in disciplinary segregation and not general population." Dkt. 1 at 5. But inmates housed in disciplinary segregation are not a protected class. *Cf. Smith v. Pachmayr*, 776 F. App'x 362, 363 (7th Cir. 2019) ("[P]risoners are not a protected class entitled to heightened equal-protection

scrutiny." (cleaned up)); *United States v. Hook*, 471 F.3d 766, 774 (7th Cir. 2006) ("Felons are not a protected class."). Mr. Printup has therefore failed to state a viable equal protection claim.

### B. Free exercise claims

Mr. Printup's First Amendment free exercise claims **SHALL PROCEED** against all defendants. Additionally, the Court interprets the complaint as alleging claims against all defendants under the Religious Land Use and Institutionalized Persons Act (RLUIPA). *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) ("The plaintiff doesn't mention [RLUIPA], but he is proceeding pro se and in such cases we interpret the free exercise claim to include the statutory claim."). It is an open question whether plaintiffs may sue individual government officials for damages under RLUIPA. *Eggers v. Vigo Cty. Sheriff's Dep't*, No. 2:21-cv-00193-JMS-MJD, dkt. 16 (S.D. Ind. July 19, 2021); *see Tanzin v. Tanvir*, 141 S. Ct. 486, 493 (2020) (holding that damages are available from individual officials under the Religious Freedom Restoration Act, which has similar remedial language to RLUIPA). Mr. Printup's religious exercise claims also **SHALL PROCEED** against all defendants under RLUIPA.

### IV. Issuance and Service of Process

The **clerk is directed** to **issue process** to defendants (1) Wendy Knight, (2) Curtis Duncan, (3) Mrs. Hall, (4) Lieutenant Richey, (5) Sergeant Jackson, (6) Lieutenant Hestand, (7) Captain Ridgeway, and (8) Officer Samaniego. Fed. R. Civ. P. 4(c)(3), 4(d). Process shall consist of the complaint, dkt. [1], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order. Service may be completed electronically.

**SO ORDERED.**

Date: 10/21/2021

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

DARIUS PRINTUP
280904
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Electronic service to IDOC employees at Correctional Industrial Facility:

    Wendy Knight
    Curtis Duncan
    Mrs. Hall
    Lieutenant Richey
    Sergeant Jackson
    Lieutenant Hestand
    Captain Ridgeway
    Officer Samaniego