UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| DARIUS PRINTUP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:21-cv-00280-JPH-MG |
| | ) | |
| WENDY KNIGHT, | ) | |
| CURTIS DUNCAN, | ) | |
| HALL, | ) | |
| RICHEY, | ) | |
| JACKSON, | ) | |
| HESTAND, | ) | |
| RIDGEWAY, | ) | |
| SAMANIEGO, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART, DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Darius Printup was an Indiana Department of Correction inmate housed at Correctional Industrial Facility (CIF). Mr. Printup is a practicing Muslim. He alleges that the defendants deprived him of religious items and denied him an opportunity to perform a ritual cleansing before the first day of Ramadan in violation of the First Amendment. Defendants have moved for summary judgment. For the reasons below, the motion for summary judgment is **DENIED** as to Mr. Printup's claims regarding the denial of a prayer rug and kufi, but otherwise **GRANTED**. Dkt. [77].

**I.      Summary Judgment Standard**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

1

as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has met its burden, "the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941–42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court may rely only on admissible evidence. *Cairel v. Alderen*, 821 F.3d 823, 830 (7th Cir. 2016). Inadmissible evidence must be disregarded. *Id.*

The Court considers assertions in the parties' statements of facts that are properly supported by citation to admissible evidence. S.D. Ind. L.R. 56-1(e). When, as here, a non-movant does not respond to the motion for summary judgment, the movant's facts are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts); *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (district

2

court may apply local rules to deem facts unopposed on summary judgment). Additionally, the Court has no duty to search or consider any part of the record not specifically cited in the statements of facts. S.D. Ind. L.R. 56-1(h). "Even where a non-movant fails to respond to a motion for summary judgment, the movant 'still ha[s] to show that summary judgment [i]s proper given the undisputed facts.'" *Robinson*, 1 F.4th at 483.

## II. Undisputed Facts

Mr. Printup practices Islam and follows sharia law. Dkt. 18 at 5, ¶ 17. His religious beliefs require him to pray five times per day using a prayer rug. Dkt. 78-1 at 10. Those beliefs also require him to clean himself before prayer. *Id.* at 11. Mr. Printup was incarcerated at CIF from July of 2020 until June 4, 2021. Dkt. 18 at 8, ¶ 26. In February 2021, he was transferred to disciplinary restrictive housing, where he remained until he was transferred to another prison. Dkt. 78-1 at 12–13. While in restrictive housing, Mr. Printup had soap and running water in his cell and was able to clean the cell. Dkt. 78-1 at 28, 41 (Printup Dep. at 28:2–6, 41:18–25). He took showers three days a week and received clean clothes twice a week. *Id.* at 26.

### A. Pre-Ramadan Purification

In 2021, Ramadan began on April 13 and ended on May 12. *Id.* at 15. During Ramadan, Mr. Printup's beliefs required him to fast, observe all his prayers, and refrain from certain activities. *Id.* at 14–15. Mr. Printup signed up to be placed on the prison's Ramadan meal list, and he received special meals throughout the month of Ramadan. *Id.* at 28. He expected that signing up for

3

the Ramadan meals list also meant that "all of [his Ramadan] requests were going to be automatically taken care of." *Id.* at 25.

Sharia law requires Muslims to undergo Ghusl, "a full body cleanse and ritual, which is done before the commencement of Ramadan." *Id.* at 11–12. On April 12, 2021, the night before the first day of Ramadan, Mr. Printup requested to shower, clean his cell, and for a clean set of clothes. *Id.* at 23. He made these requests to one or more unidentified officers. *Id.* at 24. The officers explained that they would have to call Defendants Ridgeway and Hestand regarding these requests. *Id.* at 23–24. The requests were ultimately denied. *Id.* Mr. Printup took a shower the next day, April 13—the first day of Ramadan. *Id.* at 27. Mr. Printup filed a grievance about the shower denial, and the chaplain's response explained,

> [W]hile this is a recognized valid part of your religious practice your request would have needed to be directed to [the] officer prior to the beginning of Ramadan and the necessary accommodations could have been made to assist you. It would appear that you had not done so, meaning custody staff had no prior knowledge of making any exceptions to the normal operating procedures which take place in DRH.

Dkt. 1-4.

Ordinarily, prison staff would clean an inmate's cell during recreation time if the inmate requested it, but on the day of Mr. Printup's request the officers did not have time to clean his cell as he requested. Dkt. 78-1 at 27.

### B.     Religious Items

Mr. Printup believes that a prayer rug and kufi (hair garment) are required when he performs his obligatory daily prayers. Dkt. 78-1 at 13. When he was

housed in general population, Mr. Printup was allowed to possess these items and purchase them from the prison commissary. *Id.* at 14. But when he was moved to restrictive housing, Mr. Printup returned his prayer rug to the inmate he was borrowing it from, and his kufi was placed in his property for storage. *Id.* at 13. Mr. Printup requested a prayer rug, but he was told by the chaplain that they were unavailable and was given an extra blanket to use as a prayer rug. *Id.* at 15.

Every spring, the prison collects the winter clothes and extra blankets from the cells of inmates in restrictive housing. Dkt. 78-4 at 4 (Warden Knight response to interrogatories). On April 15, 2021, Defendants Richey and Jackson performed this collection. Dkt. 78-1 at 23. When they took Mr. Printup's second blanket, he informed them that he needed it for prayer, but they took it anyway. *Id.* at 22. Mr. Printup was unable to pray for three days during Ramadan until he got his second blanket back. *Id.* at 40.

Mr. Printup spoke with Defendants Knight, Duncan, Hall, and Samaniego regarding purchasing a prayer rug and kufi off the commissary list. *Id.* at 17–20. The CIF Operational Procedures specify which religious items inmates may possess. Dkt. 78-5. In April 2021, inmates in restrictive housing were not allowed to possess prayer rugs or kufis, though they were allowed to possess a Bible, Quran, and other printed religious material. *Id.* at 2. The restriction from purchasing prayer rugs from commissary was lifted at some point. Dkt. 78-1 at 38–39. Defendant Hall notified Plaintiff that he would be able to order prayer

5

rugs on commissary, but the next time that he tried to order a prayer rug, he was still unable to do so. *Id.* at 39.

### III. Discussion

Mr. Printup alleges that the defendants substantially burdened his religious practice by (1) denying him clean clothes and an opportunity to shower on the night before Ramadan began and (2) preventing him from possessing a kufi and prayer rug, as well as confiscating the extra blanket he used as a makeshift prayer rug. The defendants argue that Mr. Printup was not substantially burdened and, in the alternative, that any substantial burden was reasonably related to legitimate penological goals.

#### A.  Applicable Law

To succeed on his First Amendment free-exercise claim,[1] Mr. Printup must convince the factfinder that the defendants "personally and unjustifiably placed a substantial burden on his religious practices." *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016). "A substantial burden puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (cleaned up). An isolated instance that impacts an inmate's religious practice will often be "de minimis" and "not of constitutional dimension." *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (denial of pork-free meals on three isolated

---

[1] The defendants' motion for summary judgment includes a section discussing the Religious Land Use and Institutionalized Persons Act (RLUIPA). Dkt. 79 at 7–8. But no RLUIPA claim is proceeding in this action. *See* dkt. 33 ("RLUIPA does not authorize any form of relief against government officials in their individual capacities. . . . Accordingly, Mr. Printup's claims will proceed only under the First Amendment, as he has presented them.").

occasions "does not constitute more than a de minimis burden on [plaintiff's] free exercise of religion").

"[A]n inmate is not entitled to follow every aspect of his religion; the prison may restrict the inmate's practices if its legitimate penological interests outweigh the prisoner's religious interests." *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005). Thus, even a substantial burden is permitted if the burden is "reasonably related to legitimate penological objectives." *Vinning-El v. Evans*, 657 F.3d 591, 592–93 (7th Cir. 2011) (citing *Turner v. Safley*, 482 U.S. 78, 89–91 (1987)). Courts rely on four factors in determining whether a substantial burden is constitutionally permissible: (1) whether the policy rationally relates to a legitimate governmental objective; (2) whether the inmate has an alternative means of exercising the right; (3) the impact that accommodating the right will have on security; and (4) whether ready alternatives exist to the prison's policy. *Turner*, 482 U.S. at 89–91. "The four factors are all important, but the first one can act as a threshold factor regardless which way it cuts." *Singer v. Raemisch*, 593 F.3d 529, 534 (7th Cir. 2010).

### B. Shower, Uniform, and Cell Cleaning

Mr. Printup has not provided evidence that the defendants' denial of his requests for a shower, clean uniform, and cell cleaning constituted a substantial burden on his religious practice. It is undisputed that Mr. Printup had access to soap and running water in his cell. Dkt. 78-1 at 28 (Printup Dep. at 28:2–6). And he has failed to show why this water source was insufficient to perform Ghusl. It is also undisputed that Mr. Printup received clean clothes twice weekly,

that he received cleaning rags he could use to clean his cell, and that prison staff ordinarily would try to clean inmate's cells during recreation time if requested. *Id.* at 26–27 (Printup Dep. 26:13–16).

Even if the denials did create a substantial burden, any reasonable jury would find based on the undisputed facts that the denials were reasonably related to legitimate penological interests. As the chaplain explained in a grievance response, the requests were denied not due to a policy against such accommodations, but due to Mr. Printup's failure to provide advanced notice of his religious requirements. Dkt. 1-4 ("[W]hile this is a recognized valid part of your religious practice your request would have needed to be directed to [the] officer prior to the beginning of Ramadan."). The relevant policy is simply one of requiring advance notice for special shower, uniform, and cell cleaning requests.

This policy is rationally related to the legitimate penological interest in orderly operation of the restrictive housing unit. The policy is a neutral one that does not target adherents to any particular religion. *See Turner*, 482 U.S. at 89–90. There is a clear alternative available to inmates: timely requesting religious accommodations. Requiring a prison to accommodate "on demand" shower, uniform, and cell cleaning requests would impact the prison's orderly operation. And Mr. Printup provides no feasible alternative. *Id.* at 91 ("[I]f an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable

8

relationship standard."). The defendants are therefore entitled to summary judgment on this portion of Mr. Printup's claim.

### C. Prayer Rug and Kufi

A reasonable jury could find based on Mr. Printup's deposition testimony that he was deprived of a kufi and prayer rug—including an alternative prayer rug for three days during Ramadan. Dkt. 78-1 at 13–14. A reasonable jury could also find that these items were required based on Mr. Printup's religious beliefs, such that the denial was not de minimis and instead constituted a substantial burden on his religious practice. *See Richardson v. Clarke*, 52 F.4th 614, 624 (4th Cir. 2022) (prohibition on inmates wearing head covering in certain areas of prison substantially burdened religious practice of Muslim inmate who believed kufi was required at all times); *Williams v. Redman*, 3:20-CV-196-JD, 2022 WL 17156053, at *3 (N.D. Ind. Nov. 22, 2022) (denying summary judgment when defendant did not contest that prohibition of proper prayer rug and kufi substantially burdened plaintiff's religious practice under RLUIPA).

The defendants argue that the IDOC policy barring Mr. Printup from possessing a prayer rug or kufi was "neutral." Dkt. 79 at 10. This evokes, without explicitly arguing, the principle that "prison orders of general application need not 'accommodate' religious preferences." *Grayson v. Goetting*, 854 Fed. Appx. 47, 49 (7th Cir. 2021) (quoting *Employment Division v. Smith*, 494 U.S. 872, 907 (1990)). Some Seventh Circuit opinions have expressed doubt, however, as to whether this principle applies to prisoner Free Exercise cases. *See Grayson v. Schuler,* 666 F.3d 450, 452–53 (7th Cir. 2012) ("[T]he applicability of *Smith* to

9

prisoners is uncertain because of an earlier Supreme Court decision, *O'Lane v. Shabazz*, not expressly overruled by *Smith* . . ., which requires prison authorities to 'accommodate' an inmate's religious preferences if consistent with security and other penological concerns." (citation omitted)); *cf. Firewalker-Fields v. Lee*, 58 F.4th 104, 114 n.2 (4th Cir. 2023) (noting Fourth Circuit's adherence to pre-*Smith* jurisprudence in prisoner cases). However, the Court need not stake out a position here.

First, the defendants rely on *Turner* and do not argue that *Smith* compels a different result. They have thus forfeited any such argument. *See Vinning-El*, 657 F.3d at 593 (applying *Turner* because "defendants briefed this appeal on the basis of *Turner* and even after the issue was raised at oral argument did not argue that we should apply *Smith*").

Second, even under *Smith*, a prison regulation must have some rational basis. *Ill. Bible Colls. Ass'n v. Anderson*, 870 F.3d 631, 639 (7th Cir. 2017). The defendants assert merely that they "have a security interest in enforcing the policy which limited what property inmates in restrictive housing were allowed to possess." Dkt. 79 at 7. But they offer no explanation—and certainly no evidence—that a kufi or prayer rug constitutes a security risk. Likewise, they offer no explanation for why a second blanket constitutes a security risk in the summer but not the winter.

The defendants are therefore not entitled to summary judgment on Mr. Printup's First Amendment claims based on the deprivation of a kufi and a prayer rug, including an alternative prayer rug for three days during Ramadan.

10

No defendant argues for summary judgment based on lack of personal involvement in these alleged constitutional violations, so the claims will proceed against all defendants in this action.

## IV.   Conclusion

The defendants' motion for summary judgment, dkt. [77], is **DENIED** as to Mr. Printup's First Amendment claims based on the denial of a prayer rug and kufi. The motion for summary judgment is **GRANTED** in all other respects. This case will proceed to settlement or trial.

The **Magistrate Judge is requested** to schedule a telephonic status conference with the parties to discuss trial readiness and the possibility of settlement.

**SO ORDERED.**

Date: 9/14/2023

          *James Patrick Hanlon*
          James Patrick Hanlon
          United States District Judge
          Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

DARIUS PRINTUP
280904
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Magistrate Judge Mario Garcia